80 U.S. 25
 20 L.Ed. 530
 13 Wall. 25
 UNITED STATES
v.
WORMER.
 December Term, 1871
 
 APPEAL from the Court of Claims.
 The claimant demanded $15,000 from the government by way of damages for breach of contract. The principal facts were that on the 26th day of February, 1864, he entered into a written agreement with the chief quartermaster of the Cavalry Bureau to deliver at the government stables in St. Charles, Illinois, by or before the 26th of March, 1200 cavalry horses, sound, and of certain specified ages, height, and quality, and on delivery to be examined and inspected without unnecessary delay by a person or persons to be appointed by the government. Rejected horses were to be removed by the contractor within one day after receiving notice of their rejection. Payment was to be made on completion of the contract, should Congress have made an appropriation for that purpose, or as soon thereafter as funds might be received. Instructions for inspectors of cavalry horses were issued a few days after the date of the contract, which required, amongst other things, that horses proposed for sale to the government should be placed in the inspection yard at least twenty-four hours before inspecting them; and none but the inspector and his assistants were to be allowed to enter the yard or to handle the horses until the inspection was completed. It was also provided that all horses which were manifestly intended as a fraud upon the government, because of incurable disease, or any purposely concealed defect, should be branded on the left shoulder with the leter R. Horses rejected for being under age, in poor condition, or injured by transportation, &c., were to be lightly branded on the front part of the fore hoof with the letter R. A large number of other directions were given to inspectors, but these were the principal ones complained of. The claimant applied to have these rules modified or suspended in his case, as not having been promulgated when he made his contract; but his application was refused. He therefore threw up his contract, and did not purchase any horses; but alleged that he sustained damages by not being allowed to perform his contract untrammelled by the new regulations.
 The Court of Claims found that the regulations materially changed and modified the contract, by throwing upon the claimant, in its performance, increased delay, greater expense, and largely augmented risk; and, therefore, they gave judgment in his favor for such damages as would make him whole, which they estimated at $9000. The United States appealed.
 
 Mr. B. H. Bristow, Solicitor-General, and Mr. C. H. Hill, Assistant Attorney-General, for the United States:
 
 Covenants which might be implied in a contract between individuals will not be in a contract made by the government, where the only express agreement is dependent on the fact of an appropriation.*
 But, independently of this, no particular rules of inspection were referred to or adopted in this contract, and the only question is were the rules actually prescribed unreasonably severe, reference being had to the fact that we were carrying on a mighty war, that the number of horses to be bought by the government was immense, and that the claimant was a public contractor; one of a class continually practicing frauds on the government. We think that they were not.
 
 Messrs. M. H. Carpenter, H. E. Totten, and I. Harris, contra:
 
 Governments are bound to perfect faith in their dealings, as much as are individuals; and, if possible, more so; for remedies against them are less complete than against individuals.
 Now, we say, when the rules in force at the time that the contract was made did not require the horses to be impounded for twenty-four hours before any inspection began, and did not stipulate that horses which, in the opinion of any person appointed as inspector by the chief of the Cavalry Bureau, were offered with manifest intention to defraud, should be branded, that the government had not a right to require that they should be impounded twenty-four hours before the inspection began, and should be branded and so rendered utterly unsalable whenever such deputy inspector pleased to fancy a fraudulent purpose; or to say that he fancied it, or even without saying anything, to act as if he knew the fact. The government had the right to keep the horses any length of time for act of inspection; they had a right to make the inspection the most rigid possible, and to reject if dissatisfied. But they had no right, after the contract made without such a provision, to instruct their subordinates to punish even the fraudulent presentation of a horse by permanently mutilating and disfiguring him; or to debase the value of the claimant's property by branding it when it was rejected for common defects involving no fraud.
 Mr. Justice BRADLEY delivered the opinion of the court.
 
 
 1
 We think that the Court of Claims erred in its finding and judgment in this case. The government clearly had the right to prescribe regulations for the inspection of horses, and there was great need of strictness in this regard, for frauds were constantly perpetrated. We see nothing unreasonable in the regulations complained of. It is well known that horses may be prepared and fixed up to appear bright and smart for a few hours, and it was altogether reasonable that they should be placed in the government yard for the period required, and that no person interested in them should be permitted to manipulate them whilst under inspection. The branding was also a proper and necessary precaution to prevent the same horses being presented a second time after condemnation. The branding on the foot was of slight importance, and the brand on the shoulder was not to be applied except in cases of absolute fraud. A person guilty of fraud would have no right to complain of the regulation being carried into effect.
 
 
 2
 As the government had the right to prescribe all proper and reasonable regulations on the subject, and as the regulations prescribed do not seem to have been unreasonable, the claimant cannot complain. If he chose, under these circumstances, to fling up his contract, he must be content to suffer any incidental damage which he may have incurred in making preparations for its performance. It was a damage voluntarily sustained, and the maxim, volenti non fit injuria, applies to the case.
 
 
 3
 DECREE REVERSED, and the court below directed to
 
 
 4
 DISMISS THE PETITION.
 
 
 
 *
 Churchward v. The Queen, Law Reports, 1 Q. B. 173, 195, et seq.